UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ZHANGLIANG XU, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:19-cv-279 (LMB/TCB) |
| JOHN DOE, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Plaintiffs' Motion for Entry of Default Judgment (Dkt. 10). After a representative for Defendants failed to respond to Plaintiffs' Motion or to appear at the hearing on May 24, 2019, the undersigned U.S. Magistrate Judge took Plaintiffs' Motion for Entry of Default Judgment under advisement.[1]

I. INTRODUCTION

A. Background

On March 12, 2019, Zhangliang Xu ("Xu"), Xiansheng He ("He"), and Lijun Sun ("Sun") (collectively, "Plaintiffs") commenced this lawsuit against John Doe ("Doe"), and <864.com>, <00998.com>, <00488.com>, <0103.com>, and <1148.com> (the "Domain Names") (collectively, "Defendants"). Plaintiffs alleges they are the rightful owner of the Domain Names and associated trademarks ("Marks"), (Compl. ¶¶ 12-13; Xu Decl. ¶¶ 4-6; He Decl. ¶¶ 4-6; Sun

---

1. The record before the Court includes the Complaint (Dkt. 1) ("Compl."); Declaration of Zhangliang Xu (Dkt. 1-1) ("Xu Decl."); Declaration of Xiansheng He (Dkt. 1-4) ("He Decl."); Declaration of Lijun Sun (Dkt. 1-7) ("Sun Decl."); Plaintiffs' Motion for Service by Publication (Dkt. 2) ("Mot. Publ'n"); Declaration of Timothy T. Wang (Dkt. 2-1) ("Wang Decl."); Plaintiffs' Motion for Entry of Default Judgment (Dkt. 10) ("Mot. Default J."); Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Entry of Default Judgment (Dkt. 11) ("Mem. Supp."); and all attachments and exhibits submitted with those filings.

Decl. ¶¶ 4-6), and that Doe illegally transferred the Domain Names to his accounts without Plaintiffs' authorization or permission (Compl. ¶¶ 16-23; Xu Decl. ¶¶ 6-7; He Decl. ¶¶ 6-7; Sun Decl. ¶¶ 6-7). Plaintiffs therefore sued Defendants alleging violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Compl. ¶¶ 30-36.) Plaintiffs now seek default judgment against Defendants for violations of ACPA,[2] and Plaintiffs also seek an order directing that the Domain Names be transferred back to their control. (Mot. Default J. at 2.)

### B. Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. The Court has subject-matter jurisdiction over this action. A federal district court has original jurisdiction when an action involves a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiffs brings this cause of action pursuant to ACPA, a federal statute. (Compl. ¶ 6; Mem. Supp. at 4.) Accordingly, the Court has subject-matter jurisdiction.

Plaintiffs allege that this Court has *in rem* jurisdiction over the Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(A), as the registry for the Domain Names is Verisign, Inc., located at 12061 Bluemont Way, Reston, Virginia 20190, and the currently listed registrant, Doe, is believed to be a citizen a citizen of China without sufficient contacts to confer personal jurisdiction in this Court or anywhere in the United States. (Compl. ¶¶ 4-5; Mot. Publ'n at 1-2; Mem. Supp. at 4.) Plaintiffs allege that venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C), because the registry for the Domain Names, Verisign, Inc., is located in this district. (Compl. ¶ 7; Mem. Supp. at 4.) Given the uncontested allegations that the registry for the Domain Names is located in this District, and that the registrant, Doe, is not subject to personal jurisdiction in this Court, the

---

2. Plaintiffs do not seek default judgment against Defendants for the Declaratory Judgment claim alleged in the Complaint. (Mot. Default J. at 2; Mem. Supp. at 2.)

undersigned finds that the Court has subject matter jurisdiction over this action, the Court has *in rem* jurisdiction over the Domain Names, and that venue is proper in this Court.

### C. Service of Process

Rule 4(n)(1) provides that the court may assert jurisdiction over property if authorized by a federal statute, and notice to claimants of the property is given as provided in the statute or by serving a summons under this rule. A plaintiff filing an *in rem* action under ACPA must provide notice via service of process of the action to the registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). When a plaintiff is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in an ACPA action, then service of process is sufficient if the plaintiff sends notice of the alleged violation and intent to bring the action to the registrant of the domain name at the postal and email addresses provided by the registrant to the registrar and publishes notice of the action as a court may direct after filing the action. *Id.* § 1125(d)(2)(A)(ii), (B).

Here, Doe has taken steps to hide his identity and has provided no address or other contact information to which notice of this action may be sent. (Compl. ¶ 9; Mot. Publ'n at 2-3; Wang Decl. ¶ 3.) In spite of this, Plaintiffs have provided notice of this action to the WHOIS addresses associated with the Domain Names, including emailing copies of the Complaint on March 12, 2019. (Compl. ¶ 9; Wang Decl. ¶¶ 4-5.) Moreover, on March 17, 2019, Plaintiffs moved for notice by publication, alleging that Doe was not subject to personal jurisdiction anywhere in the United States. (Mot. Publ'n at 1-2.) On March 18, 2019, the Court granted Plaintiffs' motion for publication and directed Plaintiffs to publish a notice of this action in *The Richmond Times-Dispatch* newspaper. (Dkt. 3.) On March 22, 2019, Plaintiffs published the required notice in *The Richmond Times-Dispatch*. (Dkt. 4.) Based on the foregoing, the undersigned finds that service of

process has been accomplished as set forth in 15 U.S.C. § 1125(d)(2)(A)(ii).

### D. Grounds for Default Judgment

To date, no party with an interest in the Domain Names has appeared or otherwise participated in these proceedings. On March 22, 2019, *The Richmond Times-Dispatch* published a notice of this action, which informed parties with an interest in the Domain Names of the need to respond in this case within twenty-one (21) days (Dkt. 4-2).[3] No party responded on behalf of Defendants by April 12, 2019. As a result, on April 17, 2019, Plaintiffs filed a Request for Entry of Default (Dkt. 7), seeking an entry of default for Defendants, and the Clerk of the Court issued the Entry Default (Dkt. 8) on the following day. Plaintiffs filed their Motion for Entry of Default Judgment (Dkt. 10) on April 26, 2019. The undersigned U.S. Magistrate Judge then held a hearing on Plaintiffs' Motion for Entry of Default Judgment on May 24, 2019, at which no representative for Defendants appeared. Finding the matter uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiffs have established the following facts.

Plaintiff Zhangliang Xu is an individual from Linzhou City, China. (Compl. ¶ 1.) Plaintiff Xu owns Domain name 864.com and its associated Marks. (*Id.* ¶ 12; Xu Decl. ¶ 4.) Plaintiff owns the Domain Name in question via a Dynadot.com account. (Compl. ¶ 12; Xu Decl. ¶¶ 4-5.) Plaintiff Xu owned and used the Domain Name in commerce beginning as early as June 2016 until July 4, 2018, when Doe hacked into Xu's account and unlawfully transferred the Domain Name out of Xu's control to Worldbizdomains.com ("Worldbiz"). (Compl. ¶¶ 14, 16, 21; Xu Decl. ¶ 6.)

---

3. The exact language in the Notice stated that any response was needed "within twenty (21) days." The undersigned interprets the Notice as providing interested parties with twenty-one (21) days to respond.

Upon discovering the hack on July 18, 2018, Plaintiff Xu immediately reported it to Dynadot, LLC, owner of Dynadot.com. (Compl. ¶ 18; Xu Decl. ¶ 7.) On July 20, 2018, Dynadot contacted Worldbiz regarding the hacking and illegal transfer. (*Id.*) Worldbiz agreed to return the Domain Name but failed to freeze the Domain Name; thereby allowing Doe to transfer the Domain Name to Enom.com. (Compl. ¶ 18; Xu Decl. ¶ 8.) Doe still maintains possession of the Domain Name while Xu retains control of his Dynadot account. (Xu Decl. ¶ 10.) Prior to the hacking, the Domain Name was used in commerce as early as June 2016 and generated an average of 200 daily visits. (Compl. ¶ 14; Xu Decl. ¶ 9.)

Plaintiff Lijun Sun is an individual from Ximmi City, China (Compl. ¶ 2.) Plaintiff Xiansheng He is an individual from Pengzhai Town, China. (*Id.* ¶ 3.) Plaintiffs Sun and He own the Domain Names 00998.com, 00488.com, 0103.com, and 1148.com and their associated Marks via a GoDaddy.com account (Customer No. 129261381). (*Id.* ¶ 13; He Decl. ¶¶ 4-6; Sun Decl. ¶¶ 4-6.) Sun and He have used 00998.com, 00488.com, 0103.com, and 1148.com in commerce in conjunction with online services offered by them as early as July 2017, February 2017, December 2016, and May 2016, respectively. (Compl. ¶ 15; He Decl. ¶¶ 6, 8; Sun Decl. ¶¶ 6, 8-11.) Those Domain Names averaged approximately 100 to 300 daily visits since operations commenced. (Compl. ¶ 15; He Decl. ¶ 8; Sun Decl. ¶¶ 8-11.) He and Sun used those domain names in commerce until March 1, 2018, when Doe hacked into their GoDaddy.com account. (Compl. ¶ 17; He Decl. ¶ 6; Sun Decl. ¶ 6.)

After hacking He and Sun's account, Doe transferred the Domain Names to an account under his control without authorization from either He or Sun. (Compl. ¶¶ 20, 22; He Decl. ¶ 6; Sun Decl. ¶ 6.) Upon discovering the hack on March 5, 2018, He and Sun immediately reported the breach to GoDaddy. (Compl. ¶ 19; He Decl. ¶ 7; Sun Decl. ¶ 7.) GoDaddy refused to return

the Domain Names to He or Sun. (*Id.*) The Domain Names remain under Doe's control. (Compl. ¶ 24; He Decl. ¶ 9; Sun Decl. ¶ 12.)

Defendant Doe is an unknown individual who has taken steps to hide his identity. (Compl. ¶ 9; Wang Decl. ¶ 3.) Doe is likely responsible for both the hack of Xu's account and of He and Sun's account as both accounts were hacked using similar scam emails. (Compl. ¶ 23; Xu Decl. ¶ 6; He Decl. ¶ 6; Sun Decl. ¶ 6.) Doe still maintains control over the Domain Names. (Compl. ¶¶ 24, 35.)

### III. EVALUATION OF PLAINTIFFS' COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *See JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiffs' ACPA claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

#### A. Legal Standard

ACPA allows the owner of a mark to file an *in rem* action against a domain name if the domain name violates the owner's trademark rights, and if the owner of the mark satisfies certain procedural provisions. *See* 15 U.S.C. § 1125(d)(2)(A). The procedural provisions include establishing that the court lacks *in personam* jurisdiction over the defendants, or that the plaintiff has been unable to locate the defendants through due diligence. *Id.* § 1125(d)(2)(A)(ii). In an *in rem* action, the remedies are limited to forfeiture, cancellation, or transfer of the infringing domain

name to the owner of the mark. *Id.* § 1125(d)(2)(D)(i).

Thus, to be entitled to *in rem* relief, the owner of a mark must prove a violation of "any right of the owner of a mark" either registered in the Patent and Trademark Office or protected under subsections 1125(a) or (c). *Id.* § 1125(d)(2)(A). The phrase "any right of the owner of a mark" encompasses rights against cybersquatting provided for under Section 1125(d)(1). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). Therefore, the owner of a mark can be entitled to *in rem* relief upon proving a violation of Section 1125(d)(1).

Plaintiffs seek relief for a violation of Section 1125(d)(1). Section 1125(d)(1) creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). Thus, to establish such an ACPA violation, a plaintiff must prove: (1) the plaintiff's ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad faith intent to profit from the mark. *See id.*

1. *Plaintiffs Possess Valid and Protectable Marks*

The undersigned finds that Plaintiffs have sufficiently demonstrated protectable rights in the Domain Names. ACPA protects both registered marks as well as unregistered common law marks. *See* 15 U.S.C. § 1125(a), (d)(2)(A)(i); *B & J Enters., Ltd. v. Giordano*, 329 F. App'x 411, 416 (4th Cir. 2009). Plaintiffs contend that they are the lawful owners of Defendant Domain Names and their associated Marks, which are protected under 15 U.S.C. § 1125(a), (d). (Compl. ¶¶ 12-13, 31; Xu Decl. ¶¶ 4-6; Sun Decl. ¶¶ 4-6; He Decl. ¶¶ 4-6.) Plaintiffs acquired the Defendant Domain Names prior to the alleged hacking and maintained registration of the Domain Names as well as used the Domain Names in commerce since their acquisition. (Compl. ¶¶ 14-15, 32; Xu Decl. ¶¶

5, 9; He Decl. ¶¶ 5, 8; Sun Decl. ¶¶ 5, 8-11.) Plaintiffs have consequently obtained common law rights in the Marks. Therefore, Plaintiffs are entitled to enforce the provisions of Section 1125(d) against any domain name that violates their rights in the protected Marks.

### 2. *Registrant Uses an Identical Domain Name*

The undersigned finds that Plaintiffs have sufficiently demonstrated that Defendant Domain Names are identical to the ones in which Plaintiffs possess common law rights. Defendant Doe unlawfully hacked and gained unauthorized access to Plaintiffs' accounts, thereby allowing Doe to transfer control of the Domain Names away from Plaintiffs. (Compl. ¶¶ 16-24; Xu Decl. ¶¶ 6-7; He Decl. ¶¶ 6-7; Sun Decl. ¶¶ 6-7; Mem. Supp. at 5-6.) Therefore, Plaintiffs have alleged sufficient facts to satisfy this requirement of ACPA.

### 3. *Registrant Has Acted with a Bad Faith Intent*

Finally, the undersigned finds that Plaintiffs have demonstrated Defendant Doe's bad faith intent to profit from their common law Marks. Under ACPA, bad faith intent may be shown by weighing nine factors. *See* 15 U.S.C. § 1125(d)(1)(B)(i). The factors are given to courts as a guide and need not be exhaustively considered in every case. *See Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005). In pertinent part, the factors relevant to a finding of bad faith include: a defendant's lack of intellectual property rights in the domain name; a defendant's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and a defendant's provision of false contact information when applying for registration of the domain name, or the defendant's intentional failure to maintain accurate contact information. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (III)-(V), (VII).

Based on these factors, the undersigned finds that Doe acted with bad faith intent to profit from Plaintiffs' Marks in violation of ACPA. First, Doe has no intellectual property rights in the Domain Names. Upon their respective acquisition dates, Plaintiffs were the sole users of the Domain Names until Doe illegally hacked their accounts and transferred the Domain Names away from their control. Second, Doe has no prior use of the Domain Names, as Plaintiffs were the sole users until Doe illegally gained control over the Domain Names. Third, Doe has no bona fide noncommercial or fair use of the Marks in a site accessible under the Domain Names, as the Domain Names are not currently being used. Fourth, Doe, by possessing the Domain names is diverting consumers away from Plaintiffs' online services. Finally, Doe failed to supply or maintain accurate contract information at either of the sites he currently uses to control the Domain Names. The factors as applied to the aforementioned facts demonstrate Doe's bad faith intent to profit from Plaintiffs' protected Marks.

### B. Conclusion

Because the remaining procedural provisions of 15 U.S.C. § 1125(d) have been satisfied, the Court may order the forfeiture or cancellation of the Domain Names or the transfer of the Domain Names to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

### IV. REQUESTED RELIEF

Plaintiffs seek transfer of the Domain Names. Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order . . . the transfer of the domain name to the owner of the mark." This court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002). Plaintiffs, having established a

violation of ACPA, are entitled to their requested relief.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned U.S. Magistrate Judge recommends that default judgment be entered in favor of Plaintiffs with respect to the Domain Names for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The undersigned also recommends that Verisign, Inc. be required to transfer ownership of the Domain Names to Plaintiffs pursuant to 15 U.S.C. § 1125(d)(1)(C). (Mem. Supp. at 8.) To that end, the undersigned recommends the Domain Names be transferred to Plaintiffs in accordance with their proposed order attached to their motion for default judgment (Dkt. 10-1).

The undersigned further recommends that Plaintiffs' other claim asserted in the Complaint (Dkt. 1) be dismissed without prejudice.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to mail and email a copy of this Report and Recommendation to the following addresses:

> Enom.com
> 5808 Lake Washington Blvd., NE, Ste. 201
> Kirkland, WA 98033
> transferdisputes@enom.com and abuse@enom.com
>
> GoDaddy.com
> Transfer Dispute Support Staff
> Corporate Headquarters,
> 14455 N. Hayden Rd., Ste. 226
> Scottsdale, Arizona 85260
> abuse@godaddy.com and courtdisputes@godaddy.com

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

May 29, 2019
Alexandria, Virginia